# No. 25-736

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JUAN CARLOS CORONEL-CARRAZCO,

Petitioner,

v.

PAMELA BONDI,
United States Attorney General,

Respondent.

ON PETITION FOR REVIEW OF A FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS

**BRIEF FOR PETITIONER**

**CASSANDRA ESTEBAN BRUSI**
153 Columbia Street, No. 2
Brooklyn, NY 11231
(202) 578-3250
info@cassandraesteban.com

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests that this matter be set for oral argument, which he believes will be useful to the Court in its disposition of this case.

/s/ Cassandra Esteban Brusi
*Attorney for Petitioner*

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ...................................................2

STATEMENT OF THE CASE..............................................................3

    I.     Mr. Coronel-Carrazco's Claim for Protection............................................3

    II.    The Agency Decisions...............................................................6

STANDARDS OF REVIEW ...............................................................8

SUMMARY OF ARGUMENT .............................................................9

ARGUMENT ...............................................................................11

    I.     <u>Asylum and Statutory Withholding of Removal</u>: The IJ disregarded this Court's precedent by failing to consider whether Petitioner had established a claim based on his actual or imputed anti-corruption political opinion ...............................................................................11

    II.    <u>CAT Withholding</u>: The IJ disregarded applicable agency regulations by failing to make a finding as to whether Petitioner's past harm rose to the level of torture ................................................................................18

CONCLUSION...........................................................................23

CERTIFICATE OF COMPLIANCE.....................................................24

ADDENDUM PURSUANT TO LR 30.1(e) ..........................................................25

- Unpublished Order of the BIA ........................................................26

- Oral Decision of the IJ ...................................................................28

CERTIFICATE OF SERVICE ................................................................38

## TABLE OF AUTHORITIES

### Cases

*Bah v. Mukasey*,
   529 F.3d 99 (2d Cir. 2008) ................................................................8

*Barrios Ventura v. Garland*,
   ___ F. App'x ___, 2024 WL 3841808 (2d Cir. Aug. 16, 2024)...................12

*Camara v. Ashcroft*,
   378 F.3d 361 (4th Cir. 2004) ...................................................19–20

*Cantarero-Lagos v. Barr*,
   924 F.3d 145 (5th Cir. 2019) ...........................................12 n.6, 14

*Cao He Lin v. DOJ*,
   428 F.3d 391 (2d Cir. 2005) ................................................................9

*Castro v. Holder*,
   597 F.3d 93 (2d Cir. 2010) ...........................................3 n.1, 8, 14

*Caz v. Garland*,
   84 F.4th 22 (1st Cir. 2023) ................................................................22

*De Leon v. Garland*,
   51 F.4th 992 (9th Cir. 2022) ...........................................20–21

*Dharwinder Singh v. Bondi*,
   139 F.4th 189 (2d Cir. 2025) .......................................................19

*Diallo v. DOJ*,
   548 F.3d 232 (2d Cir. 2008) ................................................................9

*Dong Gao v. BIA*,
   482 F.3d 122 (2d Cir. 2007) ................................................................3

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
   485 U.S. 568 (1988)........................................................................16

*Ghanem v. Att'y Gen.*,
　14 F.4th 237 (3d Cir. 2021) ........................................................... 20

*Gjerjaj v. Holder*,
　691 F.3d 288 (2d Cir. 2012) ............................................................. 8

*Hernandez-Chacon v. Barr*,
　948 F.3d 94 (2d Cir. 2020) .................................................. 3 n.1, 14

*Hernandez v. Lynch*,
　644 F. App'x 61 (2d Cir. 2016) ..................................................... 12

*INS v. Cardoza-Fonseca*,
　480 U.S. 421 (1987) ........................................................................ 17

*Loper Bright Enterprises v. Raimondo*,
　603 U.S. 369 (2024) ....................................................... 8 n.4, 13 n.6

*Manning v. Barr*,
　954 F.3d 477 (2d Cir. 2020) ............................................................. 8

*Marcos v. Gonzales*,
　410 F.3d 1112 (9th Cir. 2005) ........................................................ 22

*Martinez de Artiga v. Barr*,
　961 F.3d 586 (2d Cir. 2020) ...................................................... 9, 19

*Mei Fun Wong v. Holder*,
　633 F.3d 64 (2d Cir. 2011) ............................................................... 8

*Mendez v. Holder*,
　566 F.3d 316 (2d Cir. 2009) ............................................................. 8

*Murray v. The Schooner Charming Betsy*,
　6 U.S. 64 (1804) ............................................................................. 16

*N.L.A. v. Holder*,
　744 F.3d 425 (7th Cir. 2014) .......................................................... 22

*Osorio v. INS*,
     18 F.3d 1017 (2d Cir. 1994) ........................................... 2, 9–12, 15–17 & n.8

*Poradisova v. Gonzales*,
     420 F.3d 70 (2d Cir. 2005) ...............................................................9

*Quintero v. Garland*,
     998 F.3d 612 (4th Cir. 2021) ............................................13, 15–16

*Qun Yang v. McElroy*,
     277 F.3d 158 (2d Cir. 2002) .....................................................15–16

*Ramsameachire v. Ashcroft*,
     357 F.3d 169 (2d Cir. 2004) .....................................................18–19

*Ruqiang Yu v. Holder*,
     693 F.3d 294 (2d Cir. 2012) ...............................................................8

*Saban-Cach v. Att'y Gen.*,
     58 F.4th 716 (3d Cir. 2023) ...............................................................20

*Scarlett v. Barr*,
     957 F.3d 316 (2d Cir. 2020) ........................................................8, 20

*SEC v. Chenery Corp.*,
     332 U.S. 194 (1947).............................................................................9

*Shunfu Li v. Mukasey*,
     529 F.3d 141 (2d Cir. 2008) ...............................................................8

*Shuqiang Tian v. Bondi*,
     130 F.4th 284 (2d Cir. 2025) ..........................................................14

*Suzhen Meng v. Holder*,
     770 F.3d 1071 (2d Cir. 2014) ..........................................................19

*Uc Encarnacion v. Bondi*,
     ___ F.4th ___, 2025 WL 2775775 (9th Cir. Sep. 30, 2025)..........................21

*Yan Yang v. Barr*,
    939 F.3d 57 (2d Cir. 2019) ...................................................9–11, 14

*Yueqing Zhang v. Gonzales*,
    426 F.3d 540 (2d Cir. 2005) ...................................................14–15

## Administrative Decisions

*Matter of A-B-*,
    27 I&N Dec. 316 (A.G. 2018) ...................................................13 n.7
    28 I&N Dec. 307 (A.G. 2021) ...................................................13 n.7

*Matter of A-R-C-G-*,
    26 I&N Dec. 388 (BIA 2014) ...................................................13 n.7

*Matter of A-T-*,
    25 I&N Dec. 4 (BIA 2009) ...................................................14

*Matter of Burbano*,
    20 I&N Dec. 872 (BIA 1994) ...................................................18

*Matter of J-Y-C-*,
    24 I&N Dec. 260 (BIA 2007) ...................................................12–13 n.6

*Matter of Kasinga*,
    21 I&N Dec. 357 (BIA 1997) ...................................................13 n.7

*Matter of K-E-S-G-*,
    29 I&N Dec. 145 (BIA 2025) ...................................................13 n.7

*Matter of M-E-V-G-*,
    26 I&N Dec. 227 (BIA 2014) ...................................................13

*Matter of S-S-F-M-*,
    29 I&N Dec. 207 (A.G. 2025) ...................................................13 n.7

*Matter of W-Y-C- & H-O-B-*,
    27 I&N Dec. 189 (BIA 2018) ...................................................12–13 n.6, 13–14

## Statutes

8 U.S.C. § 1101 ......................................................................11 n.5

8 U.S.C. § 1158 ..................................................................2, 11 n.5

8 U.S.C. § 1229a ...................................................................15–16

8 U.S.C. § 1231 ..................................................................2, 11 n.5

8 U.S.C. § 1252 ........................................................................1–2

## Regulations

8 C.F.R. § 1208.16 .............................................................3, 10, 18

## Treaties

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) ("CAT") ..........................2–3, 7, 10, 18

## Other Sources

United Nations' *Handbook on Procedures and Criteria for Determining Refugee Status* (1992 ed.) .................................................................. 16–17 & n.8

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# No. 25-736

**JUAN CARLOS CORONEL-CARRAZCO,**

**Petitioner,**

**v.**

**PAMELA BONDI,**
**United States Attorney General,**

**Respondent.**

**ON PETITION FOR REVIEW OF A FINAL ORDER**
**OF THE BOARD OF IMMIGRATION APPEALS**

## JURISDICTIONAL STATEMENT

Petitioner, Mr. Juan Carlos Coronel-Carrazco, seeks review of a March 21,
2025 decision by the Board of Immigration Appeals ("BIA") affirming the January
10, 2024 decision of a New York City immigration judge ("IJ"). *See* Cert. Adm. Rec.
at 3–4, 60–69. This Court has subject matter jurisdiction under 8 U.S.C. §
1252(a)(5). The petition for review was filed on March 31, 2025, within thirty days

of the BIA decision, as required by 8 U.S.C. § 1252(b)(1). Venue is proper because the proceedings before the IJ took place in New York, which is within this judicial circuit. *See* 8 U.S.C. § 1252(b)(2).

## ISSUES PRESENTED FOR REVIEW

Before the agency, Petitioner applied for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) ("CAT"). He presents the following questions for this Court's review:

1.  In *Osorio v. INS*, this Court explained that "Congress [] set forth five grounds of persecution: (1) race, (2) religion, (3) nationality, (4) membership in a particular social group, and (5) political opinion. . . . [and] it is not necessary for the applicant to identify the correct ground; the fact finder should consider all or any combination of them." 18 F.3d 1017, 1027 (2d Cir. 1994). Did the BIA run afoul of this precedent when it held, in reliance on two unpublished decisions, that the IJ was not required to consider whether Petitioner had established a political nexus to the persecution he suffered? This is a question of law, as to which *de novo* review applies.

2

2. By regulation, IJs are required to consider "all evidence relevant to the possibility of future torture . . . , including . . . [e]vidence of past torture inflicted upon the applicant." 8 C.F.R. § 1208.16(c)(3). Did the IJ violate this regulation by denying CAT withholding without determining whether Petitioner's past harm amounted to torture? This is also a question of law, subject to *de novo* review.

## STATEMENT OF THE CASE

### I. Mr. Coronel-Carrazco's Claim for Protection[1]

Petitioner fled Ecuador and sought humanitarian protection in the United States based on harm at the hands of corrupt Ecuadoran police officers. The first threat came on March 20, 2021. *See* Cert. Adm. Rec. at 101.[2] Two officers approached Petitioner at his "small business, where he sold products—including legumes, herbs, potatoes, tomatoes, [and] broccoli—wholesale." *Id.* at 62. These

---

[1] The following facts are drawn primarily from the transcript of Petitioner's individual hearing testimony, as well as the IJ's summary of that testimony. Because "the BIA did not disturb the IJ's finding that [he] was credible, 'we treat the events []he experienced in the past as undisputed facts.'" *Hernandez-Chacon v. Barr*, 948 F.3d 94, 97 n.1 (2d Cir. 2020) (quoting *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir. 2010)).

[2] The IJ suggests that Petitioner "initially testified that the first occasion occurred on March 20th, 2021," but "on cross-examination, he was asked again the date, and he stated it was January 2021." Cert. Adm. Rec. at 62. This is not quite right. On cross-examination, counsel for the government stated—incorrectly—that Petitioner had "said before that in January 2021, the police started demanding money," and Petitioner replied that this was "correct." *Id.* at 108. "The IJ appears simply to have adopted the assumption implicit in the cross-examiner's question; an assumption underlying a question, however, is not evidence." *Dong Gao v. BIA*, 482 F.3d 122, 129 (2d Cir. 2007).

officers indicated that "security" for Petitioner's business "would be $20 a day." *Id.* at 102. This did not sit well with Petitioner, who argued—correctly—that he was entitled to police protection *without* payment of a bribe. *See id.* at 63 ("[Petitioner] initially refused, stating that it was their job to provide security as members of the police."); *see also id.* at 102 ("I said clearly that I did not agree. They had to offer their service[s] to the community. That's what they had to do."). But he "ultimately agreed to pay the extortion." *Id.* at 63.

"On April 11, 2021," however, "the two officers returned," this time "asking for twice the amount." *Id.* "[T]hat was a lot of money" to Petitioner," *id.* at 102, who "refused" to pay, *id.* at 63. Police responded by pepper-spraying Petitioner, clubbing him until he begged for mercy, and threatening him with death as well as harm to his family. *Id.* at 102 ("They sprayed peppermint [sic] on me, and they hit me—or they beat me up with a baton or a club. And I was beaten up until I said, 'Stop.' But they continued with the threats, saying that if I did not cooperate, there will be consequences for my family. And they even threatened me with death."); *id.* at 63 ("They in turn pepper sprayed [Petitioner] and beat him with a baton. They beat him until he told them to stop. However, they continued with threats, stating that if he did not cooperate, there would be consequences for his family, and they also threatened him with death.").

The following day, Petitioner attempted to report the attack at his local police precinct, but when he "asked them for help, and [] explained [his] case," police told him that "if [he] reported" the officers who were extorting him, he risked being sent "to jail if [he] los[t] due to a lack of proof." *Id.* at 103. This response is perhaps unsurprising in light of widespread, documented police corruption in Ecuador. *See, e.g.*, *id.* at 185 (Department of State: "Significant human rights issues [in Ecuador] included credible reports of[] torture and abuse by police officers . . . [and] serious government corruption."); *id.* at 223, 225 (Human Rights Watch: "Weak rule of law, [and] alleged corruption . . . remained serious concerns [in Ecuador]. . . . Democratic institutions . . . remain fragile[] amid allegations of corruption."); *id.* at 245 (InSight Crime: "The Ecuadorian public has little trust in the police."); *id.* at 251 (CNN: "Corruption allegations have [] swirled around Ecuador's justice and security system. . . . [and] graft has penetrated the police.").

Apparently, the police "communicated between themselves," *id.* at 103, because twelve days after Petitioner's attempt to report them, the original two "officers came to his place of business very upset. They closed the door. They beat him up, threw him on the floor, and kicked him. One kick went to [Petitioner's] head, causing him to lose consciousness," *id.* at 63. "[A]bout 20 minutes" later, when Petitioner came to, he "called [his] aunt" to take him to the hospital. *Id.* at 103. "The doctor there performed x-rays. . . . [Petitioner] had a fractured right hand, [] his

pointer and pinky fingers had lacerations. . . . [and] he almost lost his left eye. On April 25, he had an operation on his hand. Ultimately, [Petitioner] was hospitalized for a total of four days." *Id.* at 63; *see also id.* at 104 ("[B]esides the bruises that I had on my face and on my body, there was a fracture on my right hand and also on my finger, the one you use to point, and in the small finger. And also[,] there were lacerations on the right side. I almost lost my eye, my left eye. . . . On April the 25th, they operated on my hand. . . . There is a plate there.").

While Petitioner tried relocating to Quito, he "felt watched" and unsafe there. *Id.* at 104 ("For the small amount of time that I was in Quito, it was hard. . . . Due to everything that is happening in the country, there's no security."). His family members "had to move from house to house" due to similar feelings of being surveilled. *Id.* If repatriated, Petitioner does not know where he would be able to reside. *See id.* at 105.

## II. The Agency Decisions

Following an individual hearing on January 10, 2024, the IJ issued an oral decision denying protection. While she found that Petitioner was credible, *see id.* at 62, and concluded that the corrupt police officers' "actions r[o]se to the level of persecution," she nonetheless determined that Petitioner "ha[d] not established a nexus to a protected ground," *id.* at 63. Counsel before the IJ argued only that Petitioner had been persecuted "due to his membership in a particular social group,

which [wa]s 'a male Ecuadorian national who's the victim of death threats and brutal beatings because he refused to pay extortion fees to the police.'" *Id.* at 118. The IJ held "that this proposed particular social group [wa]s not cognizable." *Id.* at 64.[3] Petitioner's application for statutory withholding failed *a fortiori* based on the denial of asylum. *See id.* at 65. Turning to CAT withholding, the IJ explained that Petitioner "would be able to relocate" in order to avoid future torture, particularly given that his "family members remain[ed] safe in Ecuador." *Id.* at 65, 67.

On appeal to the BIA, Petitioner, represented by different counsel, argued based on this Court's caselaw that the IJ was not limited to considering the social group claim articulated by Petitioner's counsel at the time of his individual hearing, and should have analyzed whether Petitioner had a claim for asylum based on an actual or imputed anti-corruption political opinion. *See id.* at 16–19. The BIA rejected this argument, explaining that Petitioner "did not raise a political opinion claim before the [IJ]," and declining to "consider [Petitioner's political opinion] for the first time on appeal." *Id.* at 4. In all other respects, the Board "adopt[ed] and affirm[ed] the decision of the [IJ]." *Id.* at 3.

Petitioner timely sought this Court's review.

---

[3]     Petitioner did not press this social group on appeal, and does not do so now.

## STANDARDS OF REVIEW

"Where the 'BIA adopt[s] and affirm[s] the IJ's decision, [this Court] review[s] the two decisions in tandem.'" *Manning v. Barr*, 954 F.3d 477, 484 (2d Cir. 2020) (quoting *Ruqiang Yu v. Holder*, 693 F.3d 294, 297 (2d Cir. 2012)) (first and second alterations in *Manning*). To the extent that "the BIA issues a decision independent of the IJ, [the Court] review[s] the BIA's decision alone." *Mei Fun Wong v. Holder*, 633 F.3d 64, 68 (2d Cir. 2011).

This Court "review[s] *de novo* questions of law." *Gjerjaj v. Holder*, 691 F.3d 288, 292 (2d Cir. 2012) (citing *Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008)).[4] Questions regarding "the application of law to fact are [also] reviewed *de novo*." *Castro,* 597 F.3d at 99. Such questions include whether important evidence was "totally overlooked" by the agency. *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (per curiam). Pure findings of fact are reviewed for "substantial evidence," and thus must be deferred to "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Scarlett v. Barr*, 957 F.3d 316, 326 (2d Cir. 2020) (quoting *Shunfu Li v. Mukasey*, 529 F.3d 141, 146 (2d Cir. 2008)).

---

[4]     Following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024), circuit courts owe no deference to the interpretations of statutes by the agencies that administer them, although some degree of "respect" may be given to agency interpretations that were "issued roughly contemporaneously with enactment of the statute and remained consistent over time."

When "reviewing a determination or judgment which an administrative agency is alone authorized to make, the [] [C]ourt must evaluate such a decision 'solely by the grounds invoked by the agency.'" *Diallo v. DOJ*, 548 F.3d 232, 235 (2d Cir. 2008) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). As such, any "serious legal errors . . . will ordinarily require vacatur and remand for a new assessment of the evidence," *Cao He Lin v. DOJ*, 428 F.3d 391, 401 (2d Cir. 2005), unless the Court "can say with confidence that the agency would have reached the same result absent the error," *Martinez de Artiga v. Barr*, 961 F.3d 586, 591 (2d Cir. 2020). It is also sometimes the case that an agency decision lacks sufficiently detailed findings to enable review. *See Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) (requiring "a certain minimum level of analysis . . . if judicial review is to be meaningful"). In such situations, the *Chenery* doctrine will almost invariably require remand to the agency for additional analysis.

With these standards in mind, we turn to the merits of the petition.

## SUMMARY OF ARGUMENT

*First*, the agency failed to consider whether Mr. Coronel-Carrazco's persecution was on account of his actual or imputed anti-corruption political opinion. Under longstanding Second Circuit precedent, it is not necessary for an asylum applicant to identify the correct protected ground; rather, the factfinder must consider "all or any combination of them." *Osorio*, 18 F.3d at 1027; *Yan Yang v.*

*Barr*, 939 F.3d 57, 64 (2d Cir. 2019). Despite undisputed evidence that Ecuadoran police officers persecuted Mr. Coronel-Carrazco after he refused to participate in pervasive official corruption—and that officers at another precinct later shielded the perpetrators—the IJ never addressed whether this conduct constituted political persecution. The BIA compounded that error by dismissing the issue as unexhausted, contrary to *Osorio* and to the IJ's affirmative duty to develop the record and assess all possible statutory grounds of relief.

*Second*, the agency violated its own regulations governing CAT determinations. *See* 8 C.F.R. § 1208.16(c)(3). Those regulations require consideration of *all* relevant evidence, including whether an applicant previously suffered torture. The IJ, however, never determined whether the severe beatings, broken bones, threats of death, and lasting injuries Mr. Coronel-Carrazco endured amounted to past torture. By ignoring this threshold inquiry, the IJ failed to evaluate a mandatory factor that bears directly on the likelihood of future torture. The BIA's summary affirmance allowed that legal defect to stand.

Because the agency overlooked controlling precedent and failed to apply the governing regulatory standards, its decisions cannot be sustained. Remand is required for proper consideration of both Petitioner's political-opinion-based persecution claim and his entitlement to CAT protection.

## ARGUMENT

I. **Asylum and Statutory Withholding of Removal: The IJ disregarded this Court's precedent by failing to consider whether Petitioner had established a claim based on his actual or imputed anti-corruption political opinion.**

Over three decades ago, this Court explained that "Congress [] set forth five grounds of persecution: (1) race, (2) religion, (3) nationality, (4) membership in a particular social group, and (5) political opinion. . . . [and] it is not necessary for the applicant to identify the correct ground; the fact finder should consider all or any combination of them." *Osorio*, 18 F.3d at 1027.[5] As recently as 2019, the Court reiterated this basic principle. *See Yan Yang*, 939 F.3d at 64 ("This Court has previously articulated this view of the two-step process, observing that 'it is not necessary for the applicant to identify the correct ground; the fact finder should consider all or any combination of them' when reviewing an asylum application." (quoting *Osorio*, *supra*)).

Before the BIA, Petitioner appealed to these authorities. *See* Cert. Adm. Rec. at 16–17 (citing, *inter alia*, *Yan Yang*, *supra*, and *Osorio*, *supra*). The BIA

---

[5]     Eligibility for asylum or statutory withholding of removal requires a showing of "refugee" status, which entails (1) sufficiently severe harm (2) on account of a protected ground (3) at the hands of the government or a non-state actor beyond the government's control. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i), 1231(b)(3)(A). The IJ found (and the BIA affirmed) that Petitioner met the first prong of this test, and the agency did not reach the third. As such, this petition involves only prong two, often referred to as persecutory "nexus."

misconstrued Petitioner's argument, and for that reason failed to grapple with it. Claiming that Petitioner's "argument [was] that he suffered past persecution . . . on account of an anti-corruption political opinion," the BIA stated that it would "not consider [a political opinion claim] for the first time on appeal." *Id.* at 4. But Petitioner did not *ask* the BIA to analyze his political opinion claim in the first instance. Rather—consistent with decades of precedent—Petitioner argued that "it [wa]s not necessary for [him] to identify the correct ground; the [IJ] should [have] consider[ed] all or any combination of them." *Osorio*, *supra*. Because the IJ erred in failing to "consider all or any combination of" traits—specifically here, by not considering political opinion—Petitioner argued that remand was necessary so that the *IJ* could analyze his political opinion claim in the first instance.

Nowhere in its decision does the BIA acknowledge, let alone convincingly address, these precedents—it does not so much as cite them. Instead, the BIA relies on two of this Court's unpublished, summary orders, which did not address political opinion claims, but rather concerned asylum applicants' obligation to expressly delineate their particular social groups. *See* Cert. Adm. Rec. at 4 (citing *Hernandez v. Lynch*, 644 F. App'x 61, 64 (2d Cir. 2016); *Barrios Ventura v. Garland*, ___ F. App'x ___, 2024 WL 3841808 at *2 (2d Cir. Aug. 16, 2024)).[6]

---

[6] The BIA also relies on its own decisions in *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189 (BIA 2018), *aff'd sub nom. Cantarero-Lagos v. Barr*, 924 F.3d 145 (5th Cir. 2019), and *Matter of J-Y-C-*, 24 I&N Dec. 260 (BIA 2007). These cases are distinguishable for similar reasons: *W-Y-C-*

There are good reasons for requiring the exact delineation of social groups by counseled asylum applicants: "the law concerning particular social groups is 'rife with ambiguities, inconsistent applications, and circuit splits.'" *Quintero v. Garland*, 998 F.3d 612, 632 (4th Cir. 2021) (quoting Br. of *Amici Curiae* Retired Immigration Judges & Former Members of the Board of Immigration Appeals).[7] The social group ground is unique in a number of ways. *Cf., e.g.*, *Matter of M-E-V-G-*, 26 I&N Dec. 227, 239 n.13 (BIA 2014) ("[T]here is a critical difference between a political opinion or religious belief, which may in theory be entirely personal and idiosyncratic, and membership in a particular social group, which requires that others in the society share the characteristics that define the group."). And the "exact

---

& *H-O-B-* (like the summary orders cited by the BIA) was exclusively about social groups; and *J-Y-C-* involved an entirely different factual predicate being asserted as a basis for asylum on appeal, 24 I&N Dec. at 261 n.1 ("On appeal, the [applicant] also claims that he is eligible for asylum as a result of his mother's death many years ago from an alleged forced sterilization procedure. . . . In this regard, we note that although the mother's death was discussed below, eligibility for asylum on that basis was never specifically raised as a basis for the claim."). In any event, even when it is announcing rules by means of case publication, the BIA has no authority to abrogate *this Court's* published decisions, and it must continue to apply this Court's precedents in all cases arising within this circuit. *Cf. Loper Bright*, *supra*. It failed to do so here.

[7]     Granted, this is largely the agency's own fault. It has spent decades encouraging byzantine social group definitions while rejecting straightforward formulations on spurious grounds. *Compare Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1997) (en banc) (recognizing social group of "young women of the Tchamba-Kunsuntu Tribe who have not had [female genital mutilation], as practiced by that tribe, and who oppose the practice"), *with Matter of K-E-S-G-*, 29 I&N Dec. 145, 147 (BIA 2025) (concluding that a group defined as "women" was too "amorphous"). It has also oscillated violently in its social group jurisprudence. *See, e.g., Matter of A-R-C-G-*, 26 I&N Dec. 388, 390 (BIA 2014) (recognizing "group comprised of 'married women in Guatemala who are unable to leave their relationship'"); *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*A-B- I*") (overruling *A-R-C-G-*); 28 I&N Dec. 307 (A.G. 2021) ("*A-B- III*") (overruling *A-B- I* and reinstating *A-R-C-G-*); *Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025) (overruling *A-B- III*, reinstating *A-B- I*, and overruling *A-R-C-G-* again).

delineation" requirement is one of them. *W-Y-C- & H-O-B-*, 27 I&N Dec. at 191 (quoting *Matter of A-T-*, 25 I&N Dec. 4, 10 (BIA 2009)); *see also Cantarero-Lagos*, 924 F.3d at 154 (Dennis, J., concurring) ("Defining a [particular social group] is unspeakably complex and the requirements ever-changing. Even experienced immigration attorneys have difficulty articulating the contours of a [particular social group]." (citations omitted)). But a procedural requirement unique to one of the five protected grounds does nothing to relieve an IJ's obligation, as "the fact finder[,] [to] consider all or any combination of them when reviewing an asylum application." *Yan Yang*, *supra* (quotation marks omitted).

Based on the factual predicate articulated by Petitioner in support of his asylum claim, he had a colorable claim of political persecution. "[R]esisting corruption and abuse of power . . . can be an expression of political opinion." *Hernandez-Chacon*, 948 F.3d at 103 (citing *Castro*, 597 F.3d at 100). Such claims turn largely on "whether the applicant's actions were directed toward a governing institution, or only against individuals whose corruption was aberrational." *Shuqiang Tian v. Bondi*, 130 F.4th 284, 288 (2d Cir. 2025) (quoting *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 548 (2d Cir. 2005)). Here, Petitioner described corruption that was widespread. When he attempted to report the government agents who had extorted and assaulted him to officers at a different precinct, hours away, the policeman to whom he made his report threatened him with arrest, and subsequently

relayed the reporting attempt to his persecutors. *See* Cert. Adm. Rec. at 103. Country conditions evidence similarly indicates that police corruption is far from aberrational in Ecuador. *See id.* at 185, 223, 225, 245, 251 (all quoted *supra*).

Notwithstanding Petitioner's failure "to identify the correct ground," the IJ, as "the fact finder[,] should [have] consider[ed] all or any combination of them." *Osorio*, *supra*. "Here, the IJ made no effort to examine the context of [Petitioner's] activities or the nature of his opposition to the government's extortionate practices." *Yueqing Zhang*, *supra*. That was error, and the BIA was not entitled to ignore that error on the basis of two unpublished decisions that didn't even address the same issue. When it adjudicates cases in this circuit, the Board is required to follow this circuit's precedent, including by enforcing *Osorio*'s requirement that an IJ consider protected grounds not expressly raised by the applicant.

Even if *Osorio* were not binding precedent in this circuit, it has the benefit of being legally correct. "[T]he Immigration and Nationality Act [] commands immigration judges to 'administer oaths, receive evidence, and interrogate, examine, and cross-examine the [noncitizen] and any witnesses' in removal proceedings." *Quintero*, 998 F.3d at 623 (quoting 8 U.S.C. § 1229a(b)(1)) (final alteration in *Quintero*). "Based on this statutory requirement," this Court and others "have held that 'unlike an Article III judge,' an immigration judge 'is not merely the fact finder

and adjudicator but also has an obligation to establish the record.'" *Id.* (quoting *Qun Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002).

It is an inviolable canon of statutory interpretation that "an act of Congress ought *never* to be construed to violate the law of nations if *any* other possible construction remains." *Murray v. The Schooner Charming Betsy*, 6 U.S. 64, 118 (1804) (emphasis added). Indeed, "[t]his cardinal principle . . . has for so long been applied by [the Supreme] Court that it is beyond debate." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). As this Court recognized in *Osorio*, *supra*, this means that, as applied to individuals seeking humanitarian protection, provisions of the Immigration and Nationality Act should be read to conform, if at all possible, with the United Nations' *Handbook on Procedures and Criteria for Determining Refugee Status* (the "U.N. Handbook").[8] Here, 8 U.S.C. § 1229a(b)(1), which it is well-settled creates on the part of IJs "an obligation to establish the record," *Qun Yang*, *supra*, imposes as a component of that same obligation a duty, "when investigating the facts of the case, to ascertain the reason or reasons for the persecution feared and to decide whether the [refugee] definition . . . is met." U.N. Handbook, at ¶ 67.

---

[8]     The U.N. Handbook was originally issued in 1979, but was subsequently reissued in both 1992 and 2019. We cite to the 1992 edition of the U.N. Handbook, because it is the oldest version that remains widely available, and was the version in effect in 1994, at the time of this Court's decision in *Osorio*. It is available here: https://www.unhcr.org/sites/default/files/legacy-pdf/4d93528a9.pdf.

"The U.N. Handbook does not have 'the force of law . . . . Nonetheless, [it] provides significant guidance in construing the [1967] Protocol [Relating to the Status of Refugees], to which Congress sought to conform.'" *Osorio*, 18 F.3d at 1027 n.4 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 439 n.22 (1987)). In particular, "[i]t has been widely considered useful in giving content to the *obligations* that the Protocol establishes." *Cardoza-Fonseca*, *supra* (emphasis added). Here, relevant provisions of the U.N. Handbook explain that "[o]ften[,] the applicant himself may not be aware of the reasons for the persecution feared. It is not, however, his duty to analyze his case to such an extent as to identify the reasons in detail. It is for the examiner, when investigating the facts of the case, to ascertain the reason or reasons for the persecution feared and to decide whether the [refugee] definition . . . is met." U.N. Handbook, at ¶¶ 66–67.

As this Court has recognized for over thirty years, a key upshot of the Handbook's provisions is "that it is not necessary for the applicant to identify the correct ground; the fact finder should consider all or any combination of them." *Osorio*, *supra*. Where, as here, the factual predicate proffered in support of an asylum application presents a colorable claim of persecution based on the applicant's political opinion, the IJ is obligated to consider such claim. And the BIA must find error and remand if the IJ fails to do so.

II.    <u>**CAT Withholding**</u>**: The IJ disregarded applicable agency regulations by failing to make a finding as to whether Petitioner's past harm rose to the level of torture.**

With respect to CAT withholding of removal, the BIA affirmed the IJ without opinion. *See* Cert. Adm. Rec. at 3 (citing *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994) ("[O]ur independent review authority does not preclude the Board from adopting, or affirming a decision of the immigration judge, in whole or in part, when we are in agreement with the reasoning and result of that decision. In this situation, the Board's final decision may be rendered in a summary fashion."). The question for this Court is whether the IJ's CAT analysis is tainted by legal error, or otherwise unsupported by substantial evidence.

By regulation, an IJ adjudicating a CAT claim is required to consider "*all evidence* relevant to the possibility of future torture . . . , including, but not limited to: (i) [e]vidence of past torture inflicted upon the applicant; (ii) [e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;  (iii) [e]vidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and  (iv) [o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3) (emphasis added); *see also Ramsameachire v. Ashcroft*, 357 F.3d 169, 184 (2d Cir. 2004) (Sotomayor, J.) ("The regulations require the BIA to consider *all*

evidence of possible torture proffered by the alien." (emphasis in original)), *superseded by statute on other grounds as recognized in Dharwinder Singh v. Bondi*, 139 F.4th 189 (2d Cir. 2025). The IJ here failed to do so.

Despite paying lip service to "the factors as listed in the regulations," the IJ altogether skips over the first factor, beginning her analysis by "initially find[ing] that [Petitioner] would be able to relocate" under factor two. Cert. Adm. Rec. at 65. The IJ did not consider whether Petitioner's experiences—being threatened with death, pepper sprayed, and beaten with a baton to the point of requiring reconstructive surgery for fractured bones in his hand—qualified as torture. In other words, the IJ made nothing of the fact that Petitioner was "facing a sustained campaign of violent confrontations" up until roughly two weeks prior to his departure from Ecuador. *Martinez de Artiga*, 961 F.3d at 591. Pursuant to regulation, this should have been the primary factor in the IJ's analysis. Instead, it goes entirely unmentioned.

While "[p]ast torture does not give rise to a presumption of future torture," "it serves as evidence of the *possibility* of future torture." *Suzhen Meng v. Holder*, 770 F.3d 1071, 1076 (2d Cir. 2014) (emphasis in original). "[I]n not considering all the evidence relative to [Petitioner's] CAT claim, the IJ failed to follow the . . . regulations for assessing such claims, which provide that all evidence relevant to the possibility of future torture shall be considered, including evidence of past torture

19

inflicted on the applicant." *Camara v. Ashcroft*, 378 F.3d 361, 372 (4th Cir. 2004) (cleaned up). By failing to make a determination as to past torture, the IJ "overlooked significant evidence that . . . [Petitioner] is likely to face torture if removed." *Ghanem v. Att'y Gen.*, 14 F.4th 237, 249 (3d Cir. 2021). And "[i]n adopting the IJ's analysis, the BIA [likewise] overlooked significant evidence that [Petitioner] is likely to face torture if removed." *Saban-Cach v. Att'y Gen.*, 58 F.4th 716, 734 (3d Cir. 2023). Because of this deficiency in the agency's analysis, the Court "cannot conclude on the existing record that the agency gave reasoned consideration to all relevant evidence and all principles of law applicable to" Petitioner's CAT claim. *Scarlett*, 957 F.3d at 336; *cf. also De Leon v. Garland*, 51 F.4th 992, 1005 (9th Cir. 2022) ("In light of the ambiguity in the BIA's conclusion with respect to the question whether De Leon was subjected to past torture and the absence of any explanation for a conclusion on that question, if made, we remand that issue for further consideration.").

Although not necessary to secure remand, it is worth observing that in addition to skipping over the first factor entirely, the IJ's analysis of the remaining three factors is exceedingly weak.

On factor two, the IJ relies primarily on Petitioner's ten-day stay in Quito, disregarding his testimony that he felt unsafe there without explanation, *see* Cert. Adm. Rec. at 66, and without considering the Department of State's characterization

of Quito "as being a **CRITICAL**-threat location[] for crime," *id.* at 231 (emphasis in original). The IJ claims that any "persecution [sic] was isolated to Milagro" (the town where Petitioner had his business), *id.* at 66, without addressing Petitioner's testimony that police at his hometown precinct three or four hours away threatened him with arrest when he tried to make a report and subsequently coordinated with the police who attacked him in Milagro, *see id.* at 103.

Regarding factor three, the IJ addresses background country conditions (which, as noted *supra*, reflect widespread police corruption) in a scanty one sentence of analysis, seemingly penalizing Petitioner for the general background's failure "to show that the government of Ecuador is interested in" him specifically. *Id.* at 68; *but see Uc Encarnacion v. Bondi*, ___ F.4th ___, 2025 WL 2775775 at *15 (9th Cir. Sep. 30, 2025) ("[W]e have cautioned the Board against treating similar documentary evidence as too general to show a particularized threat of torture. Evidence that the government intentionally targets or acquiesces in the targeting of a specific group to which an applicant belongs is sufficiently particularized." (citations omitted) (citing, *inter alia*, *De Leon*, 51 F.4th at 1006–07, which it characterizes as "remanding where IJ failed to meaningfully engage with country-conditions report detailing 'widespread institutional corruption' in Guatemala's police force")).

To the extent the IJ addressed factor four, this was limited to a finding that Petitioner's "family members remain safe in Ecuador." Cert. Adm. Rec. at 67. But his family members never interacted with corrupt police officers and have not expressed any opposition to police corruption. *Cf. Caz v. Garland*, 84 F.4th 22, 28 n.5 (1st Cir. 2023) ("Of course, if those family members are not 'similarly situated' (i.e., they do not have the applicant's same protected characteristic that can lead to potential persecution), their continued residence in the country of removal is given little weight in the internal relocation calculus."); *cf. also N.L.A. v. Holder*, 744 F.3d 425, 434 (7th Cir. 2014) ("In contrast, one can imagine a situation in which one family member is targeted because of specific activities or characteristics that others in the family do not share. For example, the government sponsored or encouraged execution of a high ranking political leader in an unpopular political party does not, without other evidence, indicate that the other members of the family are at risk of death or serious injury. If the other family members are not also leaders of the party, they are not similarly situated and not necessarily targets."); *Marcos v. Gonzales*, 410 F.3d 1112, 1120 n.9 (9th Cir. 2005) ("The dissent points out that Marcos's family remained unharmed in the Philippines. As we have stated, this fact does not mitigate a well-founded fear of persecution because Marcos's family is not similarly situated to the applicant—his family members were not [] informers for the Philippine government." (cleaned up)).

Such slapdash reasoning does little to paper over the obvious hole in the IJ's analysis, *i.e.*, the failure to make a finding as to whether Petitioner suffered past torture, which should be the first piece of evidence to consider in determining whether he faces likely future torture.

## CONCLUSION

In light of the foregoing, the petition should be granted, the decision of the BIA vacated, and the case remanded to the agency for further analysis of Petitioner's political opinion and torture claims.

Respectfully submitted,

/s/ Cassandra Esteban Brusi
*Attorney for Petitioner*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32, I certify that this brief:

(1) is double spaced; (2) is proportionally spaced in Times New Roman, 14-point,

non-script typeface; and (3) contains 5,699 words.

/s/ Cassandra Esteban Brusi
*Attorney for Petitioner*

# ADDENDUM PURSUANT TO LR 30.1(e)

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Juan Carlos CORONEL-CARRAZCO, A220-371-910

Respondent

<div style="border:1px solid">

**FILED**

Mar 21, 2025

</div>

ON BEHALF OF RESPONDENT: Gianna M. Florentino, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Mahtabfar, Appellate Immigration Judge

MAHTABFAR, Appellate Immigration Judge

The respondent, a native and citizen of Ecuador, appeals from the Immigration Judge's January 10, 2024, decision denying his applications for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158; 1231(b)(3) and for protection under the regulations implementing the Convention Against Torture ("CAT").[1] The Department of Homeland Security has not responded to the appeal. The appeal will be dismissed.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent asserted that he suffered past persecution and fears future persecution on account of a particular social group consisting of "a male Ecuadorian national who is a victim of death threats and brutal beatings because he refused to pay extortion fees to the police." (IJ at 5; Tr. at 24; Exh. 7 at 3). The Immigration Judge denied asylum and withholding of removal, concluding that the respondent's sole proposed particular social group was not cognizable under the INA (IJ at 5-6). The Immigration Judge denied CAT protection, concluding that the respondent did not establish that it is more likely than not that he would be tortured by or with the consent or acquiescence of a public official (IJ at 6-9).

We adopt and affirm the decision of the Immigration Judge denying asylum, withholding of removal, and CAT protection. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994). We

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17; 8 C.F.R. § 1208.18(a) (2020).

000003

A220-371-910

discern no clear error of fact in the Immigration Judge's decision. The decision also properly comports with the legal precedent cited therein.

We write separately to address the respondent's argument that he suffered past persecution and fears future persecution on account of an anti-corruption political opinion (Respondent's Br. at 10-13). The respondent—who was represented by counsel at his removal hearing—did not raise a political opinion claim before the Immigration Judge. As such, we will not consider it for the first time on appeal. *See Matter of J-Y-C-*, 24 I&N Dec. 260, 261 n.1 (BIA 2007) (declining to consider for the first time on appeal a basis for asylum that was not raised below); *Hernandez v. Lynch*, 644 F. App'x 61, 64 (concluding that the Board did not err in declining to consider a proposed particular social group raised for the first time on appeal).

Additionally, we have held that "an applicant for asylum or withholding of removal must 'clearly indicate' on the record before the Immigration Judge 'what enumerated ground(s) she is relying upon in making her claim.'" *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 191 (BIA 2018) (quoting *Matter of A-T-*, 25 I&N Dec. 4, 10 (BIA 2009)). Because the respondent did not clearly articulate a political opinion claim below, the Immigration Judge did not err by not addressing persecution on account of political opinion. *See Barrios Ventura v. Garland*, No. 23-6138, 2024 WL 3841808 at *2 (2d Cir. Aug. 16, 2024) (concluding that the agency did not err in failing to consider a ground for withholding of removal that a represented alien did not raise before the Immigration Court).

Accordingly, the following order will be entered.

ORDER:   The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the INA, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

000004

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
NEW YORK, NEW YORK

File:  A220-371-910                                                  January 10, 2024

In the Matter of


|   |   |   |
|---|---|---|
| JUAN CARLOS CORONEL-CARRAZCO | ) | IN REMOVAL PROCEEDINGS |
|  | ) |  |
| RESPONDENT | ) |  |

CHARGES:


APPLICATIONS:


ON BEHALF OF RESPONDENT:   Vincent Nieves

ON BEHALF OF DHS:   Deanna Clidy


<u>ORAL DECISION OF THE IMMIGRATION JUDGE</u>

<u>I.  PROCEDURAL HISTORY</u>

The respondent is a 41-year-old male native and citizen of Ecuador who entered the United States at an unknown location on or about July 6, 2021, without valid documents and without inspection.  On September 7, 2021, the Department of Homeland Security issued a Notice to Appear charging the respondent with inadmissibility pursuant to Section 212(a)(7)(A)(ii) and 212(a)(6)(A)(i) of the Immigration and Nationality Act as a noncitizen who at the time of application for admission was not in possession of valid entry documents, and a noncitizen who is present in the United

000060

States without permission or parole.  See Exhibit 1.  The Notice to Appear vested the court with jurisdiction.  Through written pleadings filed on November 18, 2021, the respondent admitted all factual allegations and conceded the charge.  Based on the admissions and concessions, the court sustained the charge, and the Department had designated Ecuador as a country of removal, should it become necessary.  As relief from removal, the respondent filed an application for asylum, withholding of removal, and protection under the Convention Against Torture on July 5, 2022.

## II.  EVIDENCE

The respondent offered documentary evidence in support of his applications for relief.  The documentary evidence submitted by the respondent was listed as Exhibits 1 through 9.  The court has considered the entire record in making her decision regarding the respondent's applications for relief, whether or not explicitly mentioned in this decision.

In addition, the respondent offered testimonial evidence from himself and submitted a written statement.  See Exhibit 8, Tab E.  The court will rely on the relevant facts as discussed in the analysis section below.

## III.  STATEMENT OF LAW

An addendum of law stating the standards of law and burdens of proof relevant to these issues will be served on the parties, and a copy placed in the record of proceedings.  That addendum is hereby incorporated into this decision by reference.

## IV.  ANALYSIS

### A.  One-Year Filing Deadline

Under INA Section 208(a-b), it is the respondent's burden to show by clear and convincing evidence that he applied for asylum within one year of his last arrival in the United States.  The Department charged in the Notice to Appear that the respondent

entered on July 6, 2021.  Because the respondent filed his asylum application on July 5, 2022, the court will deem it timely filed.

### B.  Credibility

Having reviewed the record in its entirety, the court finds that the respondent is credible.  In making that determination, the court has considered the totality of the circumstances, including the respondent's demeanor while testifying, his responsiveness to the questions that were asked, the inherent plausibility of his claim, and the consistency of his statements and documentary evidence.

### C.  Asylum

To qualify for a grant of asylum, an applicant bears the burden of demonstrating that he meets the statutory definition of a refugee, which requires a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. For the reasons that follow, the court will deny the respondent's applications on the merits, as the respondent has not established that he has been persecuted on account of a protected ground.

In this case, the respondent testified that he had a small business where he sold products --including legumes, herbs, potatoes, tomatoes, broccoli -- wholesale. His business was located on the coast in a village called Milagro [phonetic].  The respondent himself lived in a separate village called Paute [phonetic] in the province of Azuay [phonetic].  Paute is located three to four hours away from the village of Milagro. The respondent also testified that he was harmed on three occasions.  The respondent initially testified that the first occasion occurred on March 20th, 2021, on direct examination.  However, on cross-examination, he was asked again the date, and he stated that it was January 2021.  Nevertheless, on the first occasion, two police officers

approached the respondent at his business and offered security for the respondent and for his business. In exchange, the respondent was to pay them $20 per day. The respondent initially refused, stating that it was their job to provide security as members of the police, but ultimately agreed to pay the extortion. On April 11, 2021, the two officers returned asking for twice the amount, $40 a day or $140 a week, which the respondent refused. They in turn pepper sprayed the respondent and beat him with a baton. They beat him until he told them to stop. However, they continued with threats, stating that if he did not cooperate, there would be consequences to his family, and they also threatened him with death. On April 24, 2021, the officers came to his place of business very upset. They closed the door. They beat him up, threw him on the floor, and kicked him. One kick went to the respondent's head, causing him to lose consciousness. The respondent called his aunt who lived nearby, who took him to the hospital. The doctor there performed x-rays. As a result of the beating, the respondent had bruises on his face and body. He had a fractured right hand, and his pointer and pinky finger had lacerations. The respondent also testified he almost lost his left eye. On April 25, he had an operation on his hand. Ultimately, the respondent was hospitalized for a total of four days.

The court has considered cumulatively the respondent's interactions with these two police officers: the fact that they harassed him and threatened him, gave him death threats, demanded extortion, beat him on two occasions with a baton and pepper spray, the last one resulting in bruises, lacerations, a fractured hand requiring surgery, and the respondent almost losing an eye. Cumulatively, the court finds that these actions rise to the level of persecution. However, the court finds that the respondent has not established a nexus to a protected ground.

000063

The respondent has set forth the particular social group of "male Ecuadorian national who is a victim of death threats and brutal beatings because he refused to pay extortion fees to the police." See Exhibit 7 at Page 3. The court finds that this proposed particular social group is not cognizable. The respondent's proposed social group is akin to victims of extortion. The court finds that the particular social group is circular and defined by the harm suffered. Moreover, it is not socially distinct or defined with sufficient particularity. The court finds that being a victim of extortion lacks particularity, as it is amorphous, as the group makes up a potentially large and diffuse segment of society, and is overbroad, as there are not unifying relationships or characteristics to narrow this diverse and disconnected group. See e.g. Matter of S-E-G-, 24 I&N Dec. 579, 585-86 (BIA 2008). The court would further find that the group lacks the requisite social distinction, as there is little in the background evidence of record submitted by the respondent at Exhibit 6, Tab D, to indicate that victims of extortion would be perceived as a group by society, or that these individuals suffer a higher incidence of crime than the rest of the population. See I.D.

Thus "victims of extortion" encompasses a large portion of Ecuador's population and lacks any boundaries, socially distinct features, or common characteristics, aside from the alleged persecution. See Ucelo-Gomez v. Mukasey, 509 F.3d, 70, 73 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a particular social group"); Melgar De Torres v. Reno, 191 F.3d, 307, 314 (2d Cir. 1999) (explaining that general crime conditions do not constitute persecution on account of a protected ground). In this case, the respondent did not show that he was being targeted for a particular purpose based on a protected basis and not simply due to general violence. See e.g.

Matter of M-E-V-G-, 36 I&N Dec. at 251 (holding that gang violence affects a broad range of the population, and that victims of gang violence generally are not targeted on a protected basis, but suffer from the gang's criminal efforts to sustain its enterprise in the area). The fact that the perpetrators are members of the police do not change this analysis. The respondent testified that police often extort people in order to receive extra money on top of their salary, and it is easy money for them. For these reasons, the court finds that the respondent has not established the requisite nexus to a protected ground, and will therefore deny the respondent's application for asylum.

### D. Withholding of Removal Under INA Section 241(b)(3)

Inasmuch as the respondent has failed to satisfy the lower burden of proof required for asylum, it necessarily follows that he failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. See Yang v. Gonzales, 478 F.3d, 133, 141 (2d Cir. 2007).

### E. Protection Under Article 3 of the Convention Against Torture

The court finds that the respondent did not meet his burden to show that it is more likely than not he will be tortured with the consent or acquiescence of a public official in Ecuador.

The court considers the factors as listed in the regulations. See 8 C.F.R. §1208.16(c)(3). The court initially finds that the respondent would be able to relocate prior to his business selling fruits and vegetables wholesale. The respondent worked at a corporation. The respondent currently works in construction in the United States, and the court would find that the respondent would be able to financially support himself if he relocated to another part of Ecuador. He also has a college education, as he testified to. The respondent was also able to successfully relocate to another city. He testified that he was in Quito, staying with his aunt who lives there, for 10 days. Quito is

approximately eight to 10 hours by car.  While the respondent testified he could not remain in Quito and be safe there, he speculated that the police in Ecuador would come and find him, because the police, being members of the police force, would help each other.  However, the respondent did not state that the two police officers who had attacked him and threatened extortion ever became aware of his whereabouts in Quito.  It is entirely speculative that police officers would go after him in Quito, or the police in general would come after the respondent.  The court further notes it is significant that the respondent was never harmed in his hometown in Paute.  He was only harmed in Milagro, the coastal region located three to four hours by car from the respondent's home in Paute.  Thus, it seems the persecution was isolated to Milagro, and insufficient evidence to show that the perpetrators would be interested in locating the respondent in another part.

Since the respondent left Ecuador in 2021, he testified that he received two calls from Ecuador at the end of 2021 through WhatsApp.  The respondent stated that the caller's voice was familiar to him, but he is not sure of the identity of the caller.  The caller said that he had to continue cooperating with them or assume the consequences.  The court gives little to no weight to this testimony, as the threats he received by phone since coming to the United States were not included in his written statement or asylum application.  The written statement was submitted yesterday, the day before the individual hearing, so the respondent had ample opportunity to include it.  When asked why he did not include it, he said he had forgotten because of the circumstances of being in the country and starting from zero.  However, the court does not find his answer persuasive, as he was able to include all other aspects of the claim in his statement.  Even if the court gave weight to this testimony that he did in fact receive two threatening calls since he has been in the United States, the respondent

000066

testified he did not receive any threats since the end of 2021, and again, it is speculation that the callers were the same individuals or police officers who had threatened him in the past.  The respondent himself even testified that he was not sure of the identity of the caller.  Thus, the last threat, even if true, was at the end of 2021.  There had been no threats made to the respondent since then.  It is unclear whether or not the two police officers who had attacked him in Ecuador are still interested in the respondent, how they would know if the respondent ever returned to Ecuador, or how they would become aware of his whereabouts if returned.

 Moreover, the respondent's family members remain safe in Ecuador.  The respondent testified that the perpetrators threatened him and his children and family if he did not cooperate with them.  The respondent testified that the respondent's children and parents still reside in Paute, where the respondent is from.  They have not received any threats or harm since the respondent left Ecuador in 2021.  Respondent testified that his family members felt the presence of people or unknown individuals and therefore moved to other addresses within the village of Paute.  However, the testimony that the respondent provided for the reason why they are moving to other addresses within Paute is vague.  Respondent has not identified who the people are, whether or not these people intend to harm his family.  The respondent himself acknowledged that he cannot explain who they are, but he's afraid they are the same people who harmed and mistreated him in the past.  Therefore, the respondent's testimony that these individuals are the same police officers who attacked him in the past amounts to mere speculation.  The court has reviewed the police complaint submitted by the respondent's ex-partner, and the written statements submitted by the respondent's mother and father, discussing the presence of unknown individuals around the house, causing them to change addresses.  Again, the family members are not clear who these individuals are,

000067

what their intended purpose is, or even whether or not they intended to harm them. Therefore, the court would find that it is also speculation by the respondent's family members that these individuals are tied to the individuals who harmed the respondent in the past.

Finally, the court has reviewed the country conditions for Ecuador, the respondent's submission at Exhibit 6, Tab D, and there's insufficient evidence in the country conditions to show that the government of Ecuador is interested in the respondent, let alone seeking to torture him. For these reasons, the court will deny the respondent's application for protection under the Convention Against Torture. See Zelaya-Moreno, 989 F.3d, at 204-205 (holding that even assuming the petitioner's past treatment amounted to torture, he failed to establish a sufficient likelihood of future torture if returned to El Salvador, because (1) he "did not suffer any physical violence for over three months prior to his departure" from El Salvador; (2) his departure was not met with interference from the Salvadoran gangs or police; (3) his family members remain in El Salvador, unharmed; and (4) there is no evidence in the record that the same police officers would harm him upon return).

Accordingly, the court will enter the following orders.

## V. ORDERS

It is hereby ordered that the respondent's application for asylum under INA Section 208(b)(1) is denied.

It is further ordered that the respondent's application for withholding of removal under INA Section 241(b)(3) is denied.

It is further ordered that the respondent's application for protection under the Convention Against Torture is denied.

000068

It is further ordered that the respondent be removed to Ecuador on the charge set forth in the Notice to Appear.

**_Please see the next page for electronic signature_**

Burnham, Shayne R.
Immigration Judge

000069

## CERTIFICATE OF SERVICE

I certify that on October 12, 2025, I caused the foregoing document to be filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the ACMS/ECF system. I certify that all parties are members of the ACMS/ECF system, which will accomplish service of process.

/s/ Cassandra Esteban Brusi
*Attorney for Petitioner*